UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

MAR 0 7 2008



| | | |
|---|---|---|
| PHILLIP WOODWARD, | * | CIV. 07-4046 |
| Plaintiff, | * | |
| vs. | * | REPORT AND RECOMMENDATION |
| | * | TO DISMISS UPON SCREENING |
| DOUGLAS WEBER, individually as Warden S.D. State Penitentiary, Sioux Falls, SD; DARYL SLYKHUIS, individually as Associate Warden; GARY TAYLOR, individually as Unit Manager A-Floor; MISTY WAAGMEISTER, individually as Unit Manager A-Floor; AL MADSEN, individually as Unit Manager A-Floor; LT. MILLER, individually as Special Security Investigator; THOMAS LINNEWEBBER, Major, individually as Special Security Investigator, | * | |
| Defendants. | * | |

## BACKGROUND

Pending is the need to screen plaintiff's complaint pursuant to 28 U.S.C. §1915. This is plaintiff's third complaint sprouting from an attack on him by inmate Garcia on July 2, 2002. His first complaint was about incidents at Mike Durfee State Prison. The complaint was dismissed on screening by Judge Battey as a result of pleading deficiencies (Civ. 04-4122). His second complaint arose from the same fact pattern as the first and survived screening after he corrected the pleading deficiencies. Summary judgment was granted to the defendants (Civ. 04-4167). His third complaint is now filed naming different defendants and different incidents (Doc. 1). Plaintiff described the

second complaint as a suit against the Mike Durfee State Prison defendants in Springfield, South Dakota and the third complaint as a suit against the South Dakota State Penitentiary defendants in Sioux Falls, South Dakota.

Plaintiff asserts his claims under 42 U.S.C. § 1983 (Doc. 1). He is an inmate at the South Dakota State Penitentiary in Sioux Falls, South Dakota. He asserts that he filed a motion to amend his second complaint to add several defendants, but the motion to add the defendants was denied. This third complaint, therefore, is against some of those defendants that he wanted to add to the second lawsuit. He has sued Warden Douglas Weber, Associate Warden Daryl Slykhuis, Unit Manager Gary Taylor, Unit Manager Misty Waagmeister, Unit Manager Al Madsen, Special Security Investigator Lieutenant Miller, and Special Security Investigator Major Thomas Linnewebber. For relief he requests an injunction "compelling defendants' to provide or stop, and remedy the wrong actions," and compensatory damages "in no event less than $300,000," among other matters. He was granted *in forma pauperis* status on May 2, 2007 (Doc. 5). He alleged in his third complaint that he "is currently living . . . in a single cell, single rec period, with Lexon Plexiglass on the cell front to be protected from other inmates throwing liquids."

## DISCUSSION

### A. Allegations.

Plaintiff's ultimate claim is that defendants knew he was considered a snitch and knew he was, therefore, at risk of attack from other inmates, but despite that knowledge they placed known enemies with him as cellmates and otherwise allowed his known enemies access to him. Mr. Woodward alleges that he has filed so many grievances at the penitentiary to solve his problems associated with living as a snitch that his complaints are ignored. His problems began on July 2,

2

2002, when he was attacked by Garcia with a ten pound weight while both were inmates at Mike Durfee State Prison. Woodward testified before the grand jury. Garcia was indicted for assault by the grand jury. Woodward was labeled a snitch as a result of his testimony against Garcia. From July 3, 2002, to the present (March 29, 2007) other inmates verbally and physically have assaulted him, and continue to threaten him daily. He was transferred from Mike Durfee State Prison in Springfield to the South Dakota State Penitentiary(SDSP) in Sioux Falls on March 5, 2004. His case against the Mike Durfee defendants was pending at the time of this complaint.

He immediately requested protective custody upon arrival at the SDSP. He was placed in a hard cell without any clothing by defendant Linnewebber. After five days it was determined by a nonparty prison official that protective custody was no longer necessary. He was placed in the general population. On September 13, 2004, he got into a fight with cellmate Benson. Woodward complains that he was the one who received a write up and was punished even though Benson admitted the argument and the fight and that Benson stabbed Woodward with an ink pen. After being released from disciplinary segregation in May of 2005 he "had no place to live in peace" because of the snitch label. After refusing Jensen as a cellmate on August 24, 2005, Woodward was given disciplinary segregation. Upon release defendant Waagmeister moved him on August 29, 2005. He was placed with cellmate Roland. Within minutes he became aware of threats from inmate Flute. A few minutes later a note was passed to Woodward written by inmate Burt warning him that inmate Flute was going to "confront plaintiff about being a snitch." A short time later "plaintiff was approached by Flute and a fight occurred." On September 9, 2005, Woodward was placed again in a cell with inmate Roland. Roland immediately said he would not live with a snitch. Despite Woodward's attempts to explain to inmate Roland the origins of the snitch label going back

3

to the Garcia incident at the Mike Durfee State Prison on July 2, 2002, inmate Roland on September 18, 2005, threw hot water on Woodward's face while Woodward was sleeping. Despite explaining what had happened, Woodward was given the write up.

Woodward was later placed with inmate Power as a cellmate. Power "immediately stated he did not have any issues with plaintiff." "For months other inmates tried to get inmate Power to attack plaintiff for being a snitch." Eventually a fight occurred and Power stabbed Woodward with a pair of scissors.

On May 28, 2006, Woodward was placed in disciplinary segregation after a cell search. "The search was in question and plaintiff claimed in a grievance retaliation by the officer who is no longer employed at the prison."

Inmate DesJarlais, a friend of Garcia, was moved in with Woodward and "immediately assaulted" Woodward. After DesJarlais got out of disciplinary segregation defendant Taylor moved him back to the same section where Woodward was housed despite Woodward's separation requests. DeJarlais continued to spit on Woodward and toss urine in Woodward's cell. Woodward has filed grievances about this, but nothing has been done to remedy the situation.

On January 31, 2007, defendant Al Madsen moved inmate Flute to the same section where Woodward was living. Woodward requested that inmate Flute should be removed from the section, but Madsen denied the request. Woodward was placed in disciplinary segregation for refusing housing.

"After spending 30 days in disciplinary seg for what accumulated into numerous write ups for actions by the plaintiff refusing cellmates and other acts towards prison staff just to stay in disciplinary seg because there was no safe place to go now (sic). Plaintiff is now currently living

4

in section 4 ag-seg in a single cell, single rec period, with lexon plexiglass on the cell front to be protected from other inmates throwing liquids on him."

As a result Woodward claims the defendants "exercised deliberate indifference to the plaintiff's health and safety by failing to protect him from numerous inmate attacks, threats, and other violent behavior towards plaintiff even though the defendants had been informed of threats toward the plaintiff's health and safety." Further he claims "the defendants repeatedly harassed and caused harm to the plaintiff in retaliation for the grievances and the first civil complaint of Woodward v. Dooley and the defendants at Mike Durfee State Prison." He claims "Taylor, Waagmeister, and Madsen purposely placed plaintiff's life in danger and forced him to protect himself, then ignored the plea for help and placing plaintiff at further risk of harm by subjecting plaintiff to random cell assignments with known enemies." Woodward claims the grievances he filed to complain about the treatment of him by Taylor, Waagmeister and Madsen were ignored by Warden Weber and Slykhuis. He claims Linnewebber and Miller failed to fully investigate his claims and ignored his claims.

**B.   Standard for Screening**

The Court must assume as true all facts well pleaded in the complaint. Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Also, "although liberally construed, a pro se complaint must contain specific facts supporting its conclusions." Allen v Purkett, 5. F.3d 1151, 1153 (8th Cir. 1993)(citations omitted) cert. den., 513 U.S. 829, 115 S.Ct. 100, 130, 130 L.Ed.2d 49, (1994). If it does not, dismissal is appropriate. Beavers v. Lockhart, 755, F.2d 657, 663 (8th Cir. 1985). The Federal Rules of Civil Procedure require a complainant to provide only a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the

5

defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8; Conley v. Gibson, 355, U.S. 41, 47, 78 S.Ct.99, 2 L.Ed.2d 80 (1957); Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). A plaintiff "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 127 S.Ct. at 1965.

This Court, along with many others, has for years cited the language from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. 355 U.S. at 45-46. The United States Supreme Court disavowed that oft-quoted standard, however, in Bell Atlantic. In Bell Atlantic, the Supreme Court advised that the "phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic, 127 S.Ct. at 1969. Instead, Bell Atlantic requires a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Id. at 1965. See also, Abdullah v. Minnesota, 2008 WL 283693 (Feb. 4, 2008) (citing Bell Atlantic noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory).

It has long been recognized that "civil rights pleadings should be construed liberally." Frey v. City of Herculaneum, 44 F. 3rd 667, 671 (8th Cir. 1995). The complaint, however, must at the very least contain facts which state a claim as a matter of law, and must not be conclusory. Id. Broad and conclusory statements unsupported by factual allegations are not sufficient. Ellingburg v. King,

6

490 F.2d 1270 (8th Cir. 1974). Finally, although *pro se* complaints are to be construed liberally, "they must still allege facts sufficient to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). The Court is not required to supply additional facts for a *pro se* plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. Id. It is with these standards in mind that Plaintiff's Complaint is carefully considered.

### C. Analysis

The Eighth Amendment requires prison officials to protect inmates from violence at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994). This does not, however, mean that prison officials are liable under the Eighth Amendment every time an inmate is injured by a fellow inmate. Farmer, 511 U.S. at 833; Prater v. Dahm, 89 F.3d 538, 542 (8th Cir. 1996). A prison official violates the Eighth Amendment only when an inmate is incarcerated "under conditions posing a substantial risk of serious harm" and the official acts with "deliberate indifference" for the inmate's health and safety. Farmer, 511 U.S. at 833; Randle v. Parker, 48 F.3d 301, 303 (8th Cir. 1995). A prison official exhibits deliberate indifference to an inmate's health and safety when he is subjectively aware that the inmate faces a substantial risk of serious harm, yet fails to take reasonable measures to abate or prevent the harm. Farmer, 511 U.S. at 844-45; Webb v. Lawrence County, 144 F.3d 1131, 1135 (8th Cir. 1998). "To sustain an Eighth Amendment claim based on the failure to protect him from other inmates, [Woodward] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that the prison officials actually knew of and disregarded the risk to [Woodward's] health and safety." Johnson v. Hamilton, 452 F.3d 967 (8th Cir. 2006). Woodward must sufficiently allege that the prison officials had a sufficiently culpable state of mind. Blades v. Schuetzle, 302 F.3d 801, 803 (8th Cir. 2002). In order

7

to make this showing, he must "prove that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that the official drew that inference." Id. (citations omitted). Also, "broad allegations of retaliation are not sufficient to support a claim for violation of constitutional rights." Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987).

Woodward has alleged that prison officials were aware of facts from which the inference could be drawn that a substantial risk of harm existed, but he has not sufficiently alleged that the officials actually drew the inference and disregarded the risk. Likewise, he has presented nothing except broad allegations of retaliation.

### 1. Defendants Taylor, Waagmeister, and Madsen.

Woodward's claims are broad, vague and conclusory, though his complaint is lengthy. The allegations against Taylor, Waagmeister, and Madsen are that "they purposely placed plaintiff's life in danger and forced him to protect himself, then ignored the plea for help and placing (sic) plaintiff at further risk of harm by subjecting plaintiff to random cell assignments with known enemies."

- Against Waagmeister he claims she "then moved plaintiff to section 4 of A-floor, on August 29, 2005." (Doc. 1, p. 11).

- Against Taylor he claims he "was the new unit manager and the plaintiff made every opportunity to inform Gary Taylor of the issues following the plaintiff. At every ad-seg hearing the plaintiff stated his concern over the snitch label." (Doc. 1, 13-14). He also claims Taylor "moved DesJarlais back to section 3 even after plaintiff requested separation and filed numerous grievances requesting protection." (Doc. 1, p.14).

- Against Madsen Woodward claims "[o]n January 31, 2007, unit manager Al Madsen moved inmate Levi flute to section 4." (Doc. 1, p. 15).

He generally alleges "defendants purposely ignored the requests, grievances, and protection issues of plaintiff" and that they "were and still are aware of every incident, attack, threat, and snitch

8

label placed upon plaintiff, the defendants have neglected the needs of plaintiff to take a reasonable measure to abate the risk of harm towards plaintiff after being made aware. . . ." (Doc. 1, p. 16).

### (a). WAAGMEISTER

Under Allen v Purkett, 5 F.3d 1151, 1153 (8th Cir. 1993), Woodward must support his conclusory allegations with specific facts. The claims against Waagemeister relate to a fight with inmate Flute. Woodward has failed to identify what facts Waagmeister disregarded which allowed the fight with Flute to occur. The broad conclusory allegation is that Waagmeister "purposely placed plaintiff's life in danger and forced him to protect himself, then ignored the plea for help and placing (sic) plaintiff at further risk of harm by subjecting plaintiff to random cell assignments with known enemies." Because Woodward did not explain how Waagemeister disregarded a risk to his health and safety he has made only an unsupported broad conclusory allegation that she disregarded his health and safety. The law requires more. This failure constitutes a failure to allege sufficient facts to justify the conclusion that Waagemeister actually drew the inference that a substantial risk of harm existed and that she disregarded the risk. "This subjective state of mind must be present before a plaintiff can be successful because only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Blades at 803. The § 1983 allegation against Waagmeister fails to state a claim upon which relief can be granted.

### (b). TAYLOR

Under Allen v Purkett, 5 F.3d 1151, 1153 (8th Cir. 1993), Woodward must support his conclusory allegations with specific facts. The claim against Taylor relates to DesJarlais. There is no allegation that Woodward was physically harmed by DeJarlais, although there is an allegation that DeJarlais assaulted Woodward, spit on Woodward and threw urine in his cell. Woodward has

9

failed to identify what facts Taylor disregarded which allowed these things to happen. The broad conclusory allegation is that Taylor "purposely placed plaintiff's life in danger and forced him to protect himself, then ignored the plea for help and placing (sic) plaintiff at further risk of harm by subjecting plaintiff to random cell assignments with known enemies." " Because Woodward did not explain how Taylor disregarded his health and safety Woodward has made only an unsupported broad conclusory allegation that Taylor disregarded his health and safety. The law requires more. This failure constitutes a failure to allege sufficient facts to justify the conclusion that Taylor actually drew the inference that a substantial risk of harm existed and that he disregarded the risk. "This subjective state of mind must be present before a plaintiff can be successful because only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Blades at 803. Woodward's § 1983 claim against Taylor fails to state a claim upon which relief can be granted.

### (c). MADSEN

The claim against Madsen is that on January 31, 2007, he moved Flute to the same section where Woodward was living. Flute did not harm or attack Woodward following the move on January 31, 2007. Rather, Woodward refused housing, and Woodward himself was moved to administrative segregation. Woodward has not identified what facts Madsen disregarded which allowed Woodward to be harmed. He has not alleged that he has in fact suffered harm by these occurrences. Because Woodward did not explain how Madsen disregarded his health and safety Woodward has made only an unsupported broad conclusory allegation that Madsen disregarded his health and safety. The law requires more. This failure constitutes a failure to allege sufficient facts to justify the conclusion that Madsen actually drew the inference that a substantial risk of harm existed and that he disregarded the risk. "This subjective state of mind must be present before a

plaintiff can be successful because only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Blades at 803. Woodward's § 1983 allegation against Madsen fails to state a claim upon which relief can be granted.

### 2. Defendants Weber and Slykhuis.

The claim against Weber and Slykhuis is that Woodward filed grievances against Taylor, Waagmeister, and Madsen, but the grievances were ignored by Weber and Slykhuis. Denial of grievances does not state a substantive constitutional claim. Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002). There are no allegations that Weber and Slykhuis are otherwise personally involved. To be liable, an official must be personally involved in a constitutional violation, or must, through deliberate inaction, tacitly authorize it. Ripson v. Alles, 21 F.3d 803, 809 (8th Cir. 1994). "A warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987). Public officials cannot be held liable for claims brought under § 1983 based on respondeat superior. Choate v. Lockhart, 75 F.3d 1370, 1376 (8th Cir. 1993). "First, a supervisor may not be held vicariously liable under § 1983 for an employee's actions." Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998). Because there is no evidence the persons personally involved were inadequately trained and because there is no evidence that Warden Weber or Associate Warden Slykhuis knew there was, hypothetically, inadequate training, Woodward's implicit, if not specific, claim for failure to adequately train staff fails as a matter of law. Thelma D. v. Board of Educ., 934 F.2d 929, 935 (8th Cir. 1991). Woodward's § 1983 claim against Weber and Slykhuis fails to state a claim upon which relief can be granted.

11

### 3. **Defendants Linnewebber and Miller.**

Under Allen v Purkett, 5 F.3d 1151, 1153 (8th Cir. 1993), Woodward must support his conclusory allegations with specific facts. The claims against Linnewebber and Miller are that they ignored and failed to fully investigate Woodward's claims. The allegation is that there was a "failure to adequately supervise and protect plaintiff from acts complained of caused the deprivation of plaintiff's rights" (sic). Woodward has not identified what facts Linnewebber and Miller disregarded which allowed him to suffer harm to his health and safety. The broad conclusory allegation is that Linnewebber and Miller "purposely placed plaintiff's life in danger and forced him to protect himself, then ignored the plea for help and placing (sic) plaintiff at further risk of harm by subjecting plaintiff to random cell assignments with known enemies." Because Woodward did not explain how Linnewebber and Miller disregarded his health and safety Woodward has made only an unsupported broad conclusory allegation that they disregarded his health and safety. The law requires more. This failure constitutes a failure to allege sufficient facts to justify the conclusion that Linnewebber and Miller actually drew the inference that a substantial risk of harm existed and that they disregarded the risk. "This subjective state of mind must be present before a plaintiff can be successful because only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Blades at 803. Woodward's § 1983 claim against Linnewebber and Miller fails to state a claim upon which relief can be granted.

### 4. **Retaliation.**

Woodward's retaliation claim fails for the same reason i.e. he failed to allege specific facts to support his conclusory allegation of retaliation. As a result there is no factual support for the allegation that defendants retaliated against him for filing grievances and for suing prison officials.

The bare allegation of retaliation is all there is. The law requires more. "Broad allegations of retaliation are not sufficient to support a claim for violation of constitutional rights." Flitte, at 281.

## CONCLUSION

Mr. Woodward's complaint contains broad, vague and conclusory allegations which have not been supported by identifying specific facts to support the conclusions.

- The claim against Waggmeister relates to a fight with Flute.

- The claim against Taylor relates to DeJarlais

- The allegations against Madsen again relate to Flute, but to a different circumstance from the fight.

- There are no allegations that Weber and Slykhuis were personally involved in any of the alleged incidents other than to deny grievances.

- The claims against Linnewebber and Miller are that they failed to fully investigate.

Regarding the claims against Weber and Slykhuis, denial of grievances does not amount to a violation of constitutional rights. Regarding the claims against the other defendants, Woodward has not identified what facts they or any of them disregarded which allowed Woodward to suffer harm to his health and safety. Because Woodward did not explain how they or any of them disregarded his health and safety Woodward has made only an unsupported broad conclusory allegation that they disregarded his health and safety. Mr. Woodward's complaint fails to state a claim upon which relief can be granted against any of the defendants. There are no facts identified to show that any of these defendants was personally involved regarding any of the other three fights mentioned in his complaint (Benson, Roland, and Power). Regarding the retaliation allegation, Woodward failed to allege specific facts to support his conclusory allegation so it, too, fails to state

13

a claim upon which relief can be granted. It is **RECOMMENDED** that his complaint should be dismissed without prejudice for failure to state a claim upon which relief may be granted. It is further **RECOMMENDED** that Plaintiff's pending Motion for Injunction and Motion for Copies (Docs. 1 and 7) be denied.

## THREE STRIKES WARNING

Plaintiff is advised that he has two prior "strikes" for failure to state a claim. See CIV. 04-4122 and 04-4156 and filed in this court. 28 U.S.C. § 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).
Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated this ___7___ day of March, 2008.

14

BY THE COURT:

*[signature]*

John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, CLERK

By: *[signature]*, Deputy
(SEAL)

15